STATE OF VERMONT

| | | |
|---|---|---|
| Appeal of Isaac Cowan | | Vermont Environmental Court |
| | | Docket No. 73-3-02 Vtec |
| Town of Richmond v. Cowan | } | |
| | } | |
| | } | Vermont Environmental Court |
| | } | Docket No. 102-5-02 Vtec |
| Isaac Cowan v. Town of | } | |
| Richmond | } | |
| | } | Chittenden Superior Court |
| | | Docket No. S145-03 CnC |

<u>Decision and Order on Motions for Summary Judgment</u>

(as corrected on pages 2, 3 and 8 per motion to alter and 7/1/03 telephone conference)

In Docket No. 73-3-02 Vtec, Appellant Isaac Cowan appealed from a decision of the Development Review Board (DRB) of the Town of Richmond affirming the Zoning Administrator=s denial of Appellant=s zoning permit application for a single-family residence. Docket No. 102-5-02 Vtec is the Town= s enforcement action for injunctive relief and a fine regarding a retaining wall on Appellant= s property. In the Superior Court case[1], Docket No. S145-03 CnC, Appellant appealed the denial of his application for approval of the septic system for the single family house. Appellant is represented by John W. O= Donnell, Esq.; the Town is represented by Mark L. Sperry, Esq.; and Interested Persons Erica Ell and Ned Gaston are represented by David L. Grayck, Esq.

Appellant has moved for summary judgment in all three cases. The following facts are undisputed unless otherwise noted.

Appellant owns a one-acre parcel of land located at 420 Snipe Ireland Road, in both the agricultural/residential zoning district and the flood hazard overlay zoning district. The flood hazard overlay district is defined as the areas within the 100-year flood plain by reference to the most recent Flood Insurance Rate Maps (FIRM) and the Flood Boundary and Floodway Maps created by the Federal Emergency Management Agency (FEMA). ' 6.8.2 of the Zoning Regulations. At Appellant= s parcel, the 100-year flood plain appears to occupy all the area between Snipe Ireland Road and Snipe Ireland Brook, as well as an area on the other side of the brook. (See Exhibit A to the Rodjenski affidavit filed May 15, 2003.)

Appellant= s parcel has 208 feet of frontage on Snipe Ireland Road. Snipe Ireland Brook bisects the parcel, running roughly parallel to the road approximately 102 feet from the edge of the road and at an elevation approximately 30 feet below the elevation of the road. The property is fairly flat for approximately the first 36 feet back from the road, and then slopes at approximately a 20% grade down towards the brook. The slope is unstable and is subject to erosion in its present condition.[2] On the far side of the stream[3] the land slopes steeply upwards and is not proposed for development; the contours of the land on the other side of the stream are not shown in any off the affidavit attachments.

The Ell/Gaston lot, which they purchased from Appellant in 1998, is adjacent to and to the south of Appellant= s lot. A driveway extends from Appellant= s lot onto the Ell/Gaston lot, to a parking area near a footbridge over the brook. The Ell/Gaston house has an alternative access from O= Neil Drive by a driveway over a small later-acquired adjacent parcel not at issue in the present case.

In the flood hazard overlay district, only the following uses are permitted uses in the flood plain outside of the floodway: (a) agriculture, horticulture, or forestry not involving structures; (b) seasonal sales of farm produce; and (c) parks, playgrounds, and other outdoor recreational facilities not involving structures. ' 6.8.4. In the flood hazard overlay district, only the following uses are conditional uses in the flood plain outside of the floodway: (a) parking areas; (b) essential public services; (c) structures that are accessory to private dwellings or to the listed permitted uses, that do not involve sanitary systems; or (d) enlargements or substantial improvements of [existing noncomplying] structures. ' 6.8.5. Subsection (e) of ' 6.8.5 specifically prohibits any but the listed uses to be allowed in the floodplain. As distinct from the floodplain, within the floodway itself, no structures are permitted except for uses such as bridges, dams, or bank stabilization projects, and an applicant must show that the proposed use will A not substantially increase the 100-year flood hazard area or the velocity of the watercourse or endanger existing uses.@ ' 6.8.6.

In 2000, the property contained no structures or other improvements. In a zoning permit application for a retaining wall filed in 2000, Appellant proposed to install a twelve-foot-high concrete block retaining wall approximately from 10 feet to 28 feet away from the bank of the brook and roughly parallel to the brook, running from the northerly boundary of the parcel 108 feet (approximately halfway) southerly down the lot. Appellant then proposed to grade the fill between the road and the wall to A decrease the severity of the slope as well as increase the potential for future agriculture or residential uses,@ with a resulting grade of approximately 12%. The application did not propose the wall to be temporary or set a removal date for the wall. In the narrative of the application, under the heading of > proposed grading,= Appellant stated that the wall A will be built at an elevation that is out of flood plane [sic].@

In early 2001, the Zoning Administrator approved the application (Permit No. 00-199), requiring Appellant to submit a revised site plan depicting all setbacks from property lines and distances from the proposed wall to the top of the streambank. The approval required the project to conform to the revised site plan, required that construction not occur between October 15th and April 15th, and required the work to comply with state erosion control standards. No party appealed the Zoning Administrator= s decision, and it became final.

On January 29, 2001 the Zoning Administrator issued a certified letter to Appellant requesting compliance with the condition requiring the filing of a revised site plan. The letter noted that the wall must be located outside the flood hazard overlay district, reminded Appellant that his application had represented that the wall would be built at an elevation that is out of the flood plain, and stated that the westerly edge of the flood hazard overlay district on the property is at a distance 25[4] feet from the edge of the brook. This letter was not issued in the form of a Notice of Violation. It was returned unclaimed to the Zoning Administrator.

In February 2001, Appellant constructed the retaining wall on the parcel. The southern corner of the wall is located 14'10" from the edge of the brook, and the northern corner of the wall is located 12' 8" from the edge of the brook. Due to the curve of the brook, the wall is located as much as 21 feet from the edge of the brook at an intermediate point along the wall.

On March 12, 2001, the Zoning Administrator re-sent the January 2001 letter; which was received by Appellant on March 14, 2001. No party appealed the Zoning Administrator= s March 12, 2001 letter and it became final.

On July 12, 2001, Appellant applied for a permit to install a septic system on the parcel. On July 18, 2001, the Town Health Officer[5] denied the application on the grounds that the system fails to comply with the Town= s Sewage Ordinance, specifically due to the lack of a replacement area, lack of the minimum isolation distances between the proposed disposal field and the roadway ditch, the top of the embankment, and the foundation, the lack of sufficient natural soil on the downhill side of the proposed disposal field, and the lack of sufficient depth of the test pits. In

addition, the health officer ruled that the system as designed may lead to the creation of a health hazard due to the topography of the site, its proximity to Snipe Ireland Brook and the high maintenance demands of the proposed system.

On August 23, 2001, the Zoning Administrator sent Appellant a Notice of Violation, describing the violations the failure to meet the conditions of permit 00-199 prior to construction of the retaining wall and the erection of an accessory[6] structure within the flood hazard overlay zone, and notifying Appellant of his right to appeal to the DRB within 15 days. After the appeal period had elapsed, on September 20, 2001, the Town= s attorney sent a letter to Appellant stating that the notice of violation had become final and that he must remove the structure and the fill or the Town would bring an enforcement action, including a request for fines.

In November of 2001, Appellant applied for a permit to construct a 27' x 66' single-family house on the parcel. Assuming that the A Sanitary Plan@ attached as Exhibit O to the Rodjenski affidavit is one of the site plans associated with this permit, the existing retaining wall was planned to be left in place and not removed, additional courses of blocks were proposed to be added to increase the height of the existing retaining wall, and the building pad was proposed to adjoin the westerly face of the retaining wall. The Zoning Administrator denied the permit on the basis of the matters stated in the Town Attorney= s September 2001 letter. The DRB upheld the denial on appeal.

The Town adopted a new sewage disposal ordinance effective February 3, 2002. The parties have not stated whether this ordinance was adopted within the Town= s zoning ordinance or as a separate ordinance. If it is within the zoning ordinance, the parties have not stated when it was first proposed, or whether 24 V.S.A. ' 4443(d) applies to it.

In Docket No. 73-3-02 Vtec, Appellant appealed the DRB= s decision upholding the Zoning Administrator= s denial of Appellant= s zoning permit application. Appellant argues that the basis on which the Zoning Administrator denied Appellant= s application was that the existing retaining wall was a part of the house= s foundation, but that Appellant now proposes to remove the existing retaining wall and to construct a retaining wall westerly of the flood hazard overlay district boundary, assumed to be 25 feet from the stream.

Appellant= s application as it was submitted to the Zoning Administrator and DRB showed the existing retaining wall remaining in place and as directly adjacent to the building pad. If Appellant now proposes to remove the existing retaining wall and to construct a more westerly retaining wall, that revised application may be submitted to the town process, but it must be evaluated by the regulations in place as of the time of the revised application, and is not before the Court in the present appeal. If Appellant claims that the existing retaining wall was a > bank stabilization= project, that it is in the floodway, but that it should be allowed to remain in place under ' 6.8.6, then Appellant must apply for its approval under that section and make the additional showing necessary under that section.

As to the application that was before the Zoning Administrator and then the DRB, and is on appeal in Docket No. 73-3-02 Vtec, Appellant= s motion for summary judgment must be DENIED and Summary Judgment must be GRANTED in favor of the Town. As proposed, at least the existing retaining wall, as well as at least part, if not all, of the house, lie within the flood hazard overlay district and do not fall within a use category approvable under ' 6.8.4 or 5. This denial is specifically without prejudice to Appellant= s submitting in the future any revised application for a change in the location of the retaining wall, house footprint, or septic system components, or for approval of the retaining wall (either existing or in a different location) under ' 6.8.6.

In Docket No. 102-5-02 Vtec, the Town requests injunctive relief and a monetary penalty in an enforcement action against Appellant for the construction of the existing retaining wall. Appellant

failed to appeal the August 23, 2001 Notice of Violation and therefore cannot contest the violation. If Appellant intends to remove the existing retaining wall when and if the house is built, that may go to the appropriateness or timing of the injunctive relief, but not to the existence of the violation. Appellant=s motion for summary judgment must be DENIED and summary judgment GRANTED to the Town on the issue the existence of the violation as to the existing retaining wall. At the telephone conference scheduled in the final paragraph of this decision, we will discuss whether a hearing should be scheduled on the timing of injunctive relief and the appropriateness or components of a monetary penalty, or whether such a hearing should be postponed until the other two matters and any future permit applications are resolved.

In Docket No. S145-03 CnC Appellant argues that at the time he applied for a septic system permit the Town did not have an approved Sewage Ordinance, under 24 V.S.A. ' 3633(b), and that therefore the Town had no basis to deny Appellant=s application for a septic system permit. Even if Appellant is correct that as of the time of the application, the Town did not have a properly-approved sewage ordinance, the Zoning Administrator was entitled to determine whether any element of the disposal system was located in the flood hazard overlay district and therefore could not be allowed. In addition, the Town Health Officer (also the Zoning Administrator) who denied the approval also denied it on the basis that as proposed it was likely to create a health hazard[7]. Appellant=s motion for summary judgment is therefore DENIED: even if no valid on-site sewage ordinance was in effect, the Town potentially had alternate grounds on which to deny Appellant=s application; and material facts are in dispute as to the existence of a valid sewage ordinance and as to the boundaries of the flood hazard district, floodplain, and floodway.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant=s Motion for Summary Judgment is DENIED, and that summary judgment is hereby ENTERED for the Town in Docket No. 73-3-02 Vtec and on the existence of the violation in Docket No. 102-5-02 Vtec, as discussed above. We will hold a telephone conference on July 1, 2003 to discuss the remaining issues in these three matters. If the parties would prefer an earlier conference, it can be held in person at the Chittenden District Court at noon on Wednesday June 25, 2003. Please discuss the conference scheduling with each other and call the Court by June 13, 2003 to advise of your preferences for the conference.

Done at Barre, Vermont, this 9th day of June, 2003.

_____
Merideth Wright
Environmental Judge and Specially Assigned Superior Judge

---

**Footnotes**

[1.] The septic system appeal was originally filed in Environmental Court under Docket No. 74-3-02 Vtec, was dismissed for lack of jurisdiction, and was subsequently refiled in Chittenden Superior Court, under Docket No. S145-03 CnC.

[2.] This condition may have been caused by Appellant's having cut down trees and other slope-stabilizing vegetation in the summer of 1999 and having deposited a large amount of fill on the site in late August or early September of 1999, as stated in Mr. Gaston's affidavit. This fact is not

material to any of the issues in the present cases, although it may be relevant in the event a variance is ever requested for the development of the parcel.

3. This fact is not material to any of the issues in the present cases, although it may be relevant in the event a variance is ever requested for the development of the parcel.

4. It is not clear to the Court whether this represents the edge of the floodway or the flood plain, or whether the parties disagree as to the location of the flood hazard overlay district, the 100-year flood plain, or the floodway, on Appellant's property, as between the 25-foot distance stated by the Zoning Administrator, the definition in the ordinance, and the representations of Appellant in the various applications.

5. Jeannine McCrumb, who is also the Zoning Administrator.

6. It is unclear to the Court how the wall could be an accessory structure as there is no principal use on the lot, that is, no other permitted or conditional or pre-existing use on the lot to which it could be accessory.

7. We note that town selectboards have broad authority under 18 V.S.A. §126 to issue health orders to prevent as well as to abate public health hazards.